IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JONATHAN DAVIDSON,

    Plaintiff,

    v.                                                No. 14-CV-3596

                                                    COMPLAINT
                                                    [Civil Rights Action under 42
                                                    U.S.C. § 1983]

CITY OF STAFFORD, TEX.;
BONNY KRAHN, Chief of Police, City of Stafford, Tex.
HENRY GARCIA, Police Officer, City of Stafford, Tex.
POLICE OFFICER #188 with the surname JONES, City of Stafford, Tex.
STEVEN FLAGG, Police Officer, City of Stafford, Tex.

    Defendants.

_____/

**COMPLAINT**

Plaintiff Jonathan Davidson ("Plaintiff"), by and through undersigned counsel, brings this civil rights Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof alleges the following upon information and belief:

**INTRODUCTION**

1. This case seeks to protect and vindicate fundamental constitutional rights. It is a civil rights action brought under the First and Fourteenth Amendments to the United States Constitution as well as 42 U.S.C. § 1983, challenging Defendants' acts, policies, practices, customs, and/or procedures that deprived Plaintiff of the right to engage in speech and expressive activities in the City of Stafford, Texas ("Stafford") during Plaintiff's unlawful arrest on May 31,

1

2013.  Defendants' policies, practices, customs, and/or procedures will continue to deprive Plaintiff of his fundamental constitutional rights at future free speech events in Stafford.

2.      Stafford, and its highest ranking officials, including the Chief of Police B. Krahn and Police Officers Henry Garcia (officer #181), Jones (officer #188), and Steven Flagg (officer #178), (collectively, "Defendant-Officers"), in conjunction, agreement, and cooperation with police officers and officials, worked together, acted with reckless and callous indifference to Plaintiff's constitutional rights, and in fact did jointly engage in conduct that deprived Plaintiff of his fundamental constitutional rights.  Defendants' actions were taken to silence, chill, and stop Plaintiff from engaging in constitutionally protected activities; and did so silence, chill, and stop Plaintiff.

3.      Plaintiff seeks a declaration that Defendants violated his clearly established constitutional rights as set forth in this Complaint; a declaration that Defendants in their individual capacity acted with callous indifference for Plaintiff's clearly established constitutional rights as set forth in this Complaint; a permanent injunction enjoining the enforcement of Defendants' unconstitutional acts, policies, practices, customs, and/or procedures as set forth in this Complaint; and a judgment awarding nominal, compensatory, and punitive damages against Defendants for the harm caused to Plaintiff by the conduct of the Defendants which violated the fundamental rights of Plaintiff.  Plaintiff also seeks an award of reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

4.      This action arises under the Constitution and laws of the United States.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

5.  Plaintiff's claims for injunctive relief are authorized by 28 U.S.C §§ 2201 and 2202, by Rule 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court. Plaintiff's claims for damages are authorized under 42 U.S.C. § 1983 and by the general legal and equitable powers of this Court.

6.  Venue is proper under 28 U.S.C. § 1391(b) because substantial parts of the events or omission giving rise to Plaintiff's claims occurred in this district.

## PLAINTIFF

7.  Plaintiff is a resident of Harris County, Texas.

8.  Plaintiff is a peaceful protestor whose conscience compels him to object to the practices of abortion.

9.  Plaintiff's peaceful protests consist of standing on public property while praying and holding a sign which asks for others to pray for an end to abortion and handing out leaflets which describe free, non-abortive health services available to women in Stafford.

10. Engaging in peaceful demonstrations against the practices of abortion constitutes a proper exercise of free speech.

11. Plaintiff intends to continue his peaceful protests against abortion in the vicinity of the Stafford Planned Parenthood in the future.

## DEFENDANTS

12. Defendant City of Stafford is a municipal entity organized and existing under the laws of the State of Texas. It is a municipal corporation with the right to sue and be sued. Stafford's main address is 2610 South Main St., Stafford, Fort Bend County, Texas 77477.

13. Stafford and its officials are responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the city,

including the policies, practices, and procedures of its police department as set forth in this Complaint.

14. Stafford and its officials are also responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs that deprived Plaintiff of his fundamental constitutional rights during the free speech event. These rules, regulations, policies, practices, procedures and/or customs were the moving force behind the actions that deprived Plaintiff of his fundamental constitutional rights as set forth in this Complaint.

15. At all relevant times, Stafford trained, supervised, and employed its police officers, including Defendant B. Krahn and Defendant-Officers.

16. The acts, policies, practices, customs, and/or procedures of Stafford and its police department were the moving force behind the constitutional violations set forth in this Complaint. The deficient training and supervision of these officers, which was done with the deliberate indifference as to their known or obvious consequence, was also a moving force behind the actions that deprived Plaintiff of his fundamental constitutional rights as set forth in this Complaint.

17. Stafford approved of and ratified the acts, policies, practices, customs, and/or procedures of its police department and its police officers, including Defendant B. Krahn and Defendant-Officers, relating to silencing Plaintiff's speech and expressive activities on or about May 31, 2013.

18. Stafford's actions as set forth below deprived Plaintiff of his fundamental constitutional rights as set forth in this Complaint.

19.     Defendant B. Krahn is the Chief of Police for the Stafford Police Department. His main office is located at 2702 South Main, Stafford, Fort Bend County, Texas 77477. At all relevant times, he was an agent, servant, and/or employee of the City, acting under the color of state law and acting pursuant to Stafford's policies, practices, customs, and/or procedures.

20.     As the Chief of Police, Defendant B. Krahn is responsible for the acts, policies, practices, customs, and/or procedures of the police department that deprived Plaintiff of his fundamental constitutional rights during the free speech event as set forth in this Complaint. At all relevant times, Krahn had policymaking authority both explicitly through the City's written ordinances and implicitly as a result of the delegation of authority and the customs and practices of the City of Stafford City Council. Chief Krahn had authority to establish binding city policy respecting matters relating to the police department and to adjust that policy for changing circumstances. Such authority is reflected in the City's ordinances delegating all policymaking authority for the police department to Chief Krahn. Furthermore, it is reflected in the custom and practice of Chief Krahn establishing all practices of the police department, including all relevant General Orders relating to police operations, which are not even reviewed by the Stafford City Council.

21.     These rules, regulations, policies, practices, procedures, and/or customs were the moving force behind the actions that deprived Plaintiff of his fundamental constitutional rights. Defendant B. Krahn is sued individually and in his official capacity as Chief of Police for the Stafford Police Department.

22.     Defendant-Officers are police officers for the Stafford Police Department. At all relevant times, Defendant-Officers were agents, servants, and/or employees of Stafford, acting under color of state law.

23. Defendant-Officers deprived Plaintiff of his fundamental constitutional rights on or about May 31, 2013. Defendant-Officers are sued individually and in their official capacities as police officers for the Stafford Police Department.

### STATEMENT OF FACTS

24. On May 31, 2013, Plaintiff stood on public property next to the U.S. Highway 59 ("Southwest Freeway") southbound feeder road in front of Planned Parenthood at 12614 Southwest Freeway, Suite A, Stafford, TX, 77477.

25. Planned Parenthood's 12614 Southwest Freeway location is in a plaza with other businesses, and as such, it is impossible to tell which people entering the plaza are Planned Parenthood's customers and which are merely shopping at nearby businesses.

26. Plaintiff prayed and held a sign encouraging those driving on the feeder road next to the facility to pray for an end to abortion.

27. While holding the sign, Plaintiff pointed to Planned Parenthood so that his message was contextualized.

28. Plaintiff directly interacted with only a few individuals during his peaceful protest.

29. Plaintiff interacted with a woman sitting in her vehicle waiting to exit the lot, right next to where Plaintiff was standing. Plaintiff briefly informed her that Planned Parenthood was an abortion facility and discussed his beliefs in opposition to abortion with the woman. The woman informed him that she was leaving Robert's Carpet. They left on friendly terms.

30. In like manner, Plaintiff also communicated with another woman as she sat in her vehicle waiting to exit to the feeder road. Plaintiff handed her a "free ultrasound" coupon, and they left on friendly terms.

31. Plaintiff was then approached by an unknown female employee of Planned Parenthood, who began shouting at him from a distance of several feet. She was shouting something to the effect of "you can't be out here."

32. Plaintiff could not understand all of what the unknown employee was saying at that distance and raised his hand to indicate that he was not interested in a conversation with her.

33. Plaintiff continued his peaceful protest. At this point, Plaintiff had been engaging in this peaceful prayer and expressive activity for approximately one hour.

34. One officer arrived at the scene shortly thereafter and held a conversation out of Plaintiff's hearing for approximately five minutes with the same unknown Planned Parenthood employee. A second officer then arrived. Plaintiff continued his peaceful protest, holding his sign and pointing to the Planned Parenthood facility, so the officers could see clearly that he was exercising his free speech rights and not breaking any laws.

35. After conversing with unknown female Planned Parenthood employee, two of the Defendant-Officers walked towards Plaintiff and ordered him to leave his peaceful protest and approach where they were standing in the parking lot, approximately fifteen feet away from Plaintiff. The two Defendant-Officers shouted "come here!" . Plaintiff believes that the Planned Parenthood employee stood and watched from the Planned Parenthood doorway during these events.

36. Plaintiff momentarily considered whether he could be compelled to leave his peaceful protest but complied with the commands of the law enforcement officers.

37. Defendant-Officers were immediately hostile to Plaintiff upon his arrival and began accusing him of things like "harassing" Planned Parenthood's customers. The officers did not

ask Plaintiff any questions about Plaintiff's activities, but instead made accusatory and hostile statements about his activities.

38. Plaintiff responded that he was there to pray, hold a sign, and hand out leaflets letting women know there are other options available to them, like free pregnancy care services, for example. Plaintiff stated that he had no way of knowing which people entering the plaza were Planned Parenthood's customers.

39. Plaintiff knew that he had not broken any laws.

40. Defendant-Officers demanded to see Plaintiff's identification card.

41. Plaintiff was confused by the request and responded that his name was "Jonathan" and that his driver's license was in his truck, which was not parked in the Planned Parenthood lot. Plaintiff's truck was parked at an adjoining complex, where he had eaten at Quizno's prior to beginning his protest.

42. The two Defendant-Officers demanded to know why Plaintiff did not have his identification papers on his person. Plaintiff again informed the Defendant-Officers that his identification was in his vehicle a short distance away.

43. The two Defendant-Officers again asked Plaintiff what his name was, to which Plaintiff again responded "Jonathan."

44. Noticing that the situation was becoming increasingly tense, Plaintiff introduced himself as "Jonathan" and offered to shake hands with the two Defendant-Officers.

45. One officer, whom Plaintiff believes to be Officer Flagg, shook Plaintiff's hand, but the other officer, whom Plaintiff believes was Officer Jones, refused Plaintiff's offer to shake hands, and said in a hostile manner to Plaintiff, "I'm not shaking your hand," or words to that effect.

46. Defendant-Officers once more asked for Plaintiff's name, including his last name.

47. Again Plaintiff responded, "you can call me Jonathan." At this point Plaintiff was very confused and frustrated, and felt intimidated. Plaintiff said, "I've already told you my name. I'm not breaking any laws," or words to that effect. Plaintiff then took a step back toward where he had been conducting his peaceful protest.

48. Defendant S. Flagg then, suddenly and without warning, shoved Plaintiff, knocking his sign from his hands. Defendant Flagg turned Plaintiff around and handcuffed him. Flagg stated that Plaintiff was "under arrest for failing to identify," or words to that effect.

49. The two Defendant-Officers placed Plaintiff in handcuffs and into the squad car.

50. This arrest was performed without probable cause that Plaintiff committed a crime.

51. Plaintiff asked what the arresting charge was as he was being led to the squad car and was told that it was due to his "failure to identify." Plaintiff stated to the two Defendant Officers that he had already told them his name and that his identification was in his truck nearby.

52. Plaintiff was not read his Miranda Rights.

53. Plaintiff remained in the squad car, which was not air conditioned in the backseat due to plexiglass separation from the front of the car, on the way to jail. This incident occurred in the middle of the very hot summer. Plaintiff had already been standing outside for approximately an hour during his protest, without water, before the Defendant Officers arrived.

54. Plaintiff experienced symptoms consistent with heat exhaustion because the air conditioning was only in the front seat of the car, and it was very hot. Plaintiff felt as if he could throw up and pass out.

55. Upon reaching the jail, Plaintiff was strip-searched and processed.

56. Plaintiff's vehicle was towed at the request of Defendant-Officers from where Plaintiff had legally parked it. Plaintiff incurred $217.50 in charges to retrieve his vehicle from the

towing company. Plaintiff drove approximately 47 miles to retrieve his vehicle. According to the IRS standard mileage reimbursement rate in 2013, this totals to $26.50.

57. Plaintiff was in custody for at least 8.5 hours, from the time of his arrest until he was finally released from jail at approximately midnight. Plaintiff was forced to miss work that evening, which he had planned from 4:00 p.m. to 9:00 p.m, causing Plaintiff lost income of $413.15.

58. While charges were filed against Plaintiff for "FAIL TO IDENTIFY" pursuant to article 38.02, Texas Code of Criminal Procedure, the Fort Bend County District Attorney's Office declined to prosecute Plaintiff. Instead, the Assistant District Attorney executed a "Notice to Dismiss" on June 26, 2013, citing "INSUFFICIENT EVIDENCE, REFILE AS CLASS C." The matter was referred to the Stafford municipal prosecutor for possible charges.

59. The specter of prosecution by the Stafford municipal authorities hung over Plaintiff's head for a long period of time with no notification from Stafford authorities as to whether charges were being pursued.

60. Since his unlawful arrest, Plaintiff has engaged in pro-life speech in other locations, but he has not returned to engage in pro-life speech at the Stafford Planned Parenthood since this incident.

61. On June 20, 2014, counsel for Plaintiff wrote to the Stafford municipal attorney and to the Chief of Police, Defendant B. Krahn, notifying them that Plaintiff's arrest was illegal and requesting confirmation that Stafford will not prosecute Plaintiff in this matter and that any charges are being dismissed. Plaintiff additionally requested specific confirmation that he will not be subjected to detention, arrest or harassment by the Stafford Police Department or any

other Stafford officials while engaging in protected activity outside the Stafford Planned Parenthood in the same peaceful and legal manner as on the date of his arrest.

62. On June 24, 2014, the City Attorney for the City of Stafford replied to Plaintiff's June 20 letter. The City Attorney stated only that there "are no pending charges" against Plaintiff and "the City of Stafford will not file a criminal charge against [Plaintiff] for the incident referenced in your letter." However, the City Attorney provided no further assurance, as requested, that Plaintiff would not be subjected to similar treatment if he again engages in a similar protest at the Planned Parenthood.

63. Plaintiff has not been prosecuted because he committed no crime.

64. Neither Stafford nor its officers explained why Plaintiff was not simply released upon his arrival at the Stafford Police Department.

65. Plaintiff has requested a copy of the police report from his arrest, which was denied.

66. Stafford Police Department is still in possession of Plaintiff's property, a sign which says "Pray to End Abortion."

67. Plaintiff intends to return to the same Stafford Planned Parenthood to engage in the same protected activity, protesting abortion, in a materially similar manner as on the date of his arrest.

68. Plaintiff has not returned to the same Stafford Planned Parenthood to engage in his protected speech activity because he fears he will again be arrested or detained unlawfully, chilling his First Amendment rights. This harm is irreparable and there is no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

**(Freedom of Speech—First Amendment)**

69. Plaintiff hereby incorporates by reference all preceding paragraphs.

70. By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiff of his right to freedom of speech in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

71. At the time of his arrest on May 31, 2013, Plaintiff was participating in constitutionally protected activity. Defendants' actions injured Plaintiff in a way likely to chill a person of ordinary firmness from further participation in that activity. Plaintiff's constitutionally protected activity motivated Defendants' adverse actions. Thus, Defendants acted with a retaliatory intent or motive.

72. By arresting Plaintiff for engaging in his free speech activity on May 31, 2013, without probable cause, Defendants violated the First Amendment.

73. By seizing Plaintiff's sign on May 31, 2013 and maintaining control of Plaintiff's sign to date without lawful authority, Defendants deprived Plaintiff of his right to freedom of speech.

74. The enforcement of Defendants' Arrest Policy against Plaintiff on May 31, 2013 deprived Plaintiff of his right to freedom of speech in violation of the First Amendment.

75. Defendants' Arrest Policy was the moving force behind the May 31, 2013 violation of Plaintiff's right to freedom of speech by the First Amendment.

76. Stafford's failure to adequately train and supervise its employees as set forth in this Complaint was a moving force behind the violation of Plaintiff's right to freedom of speech, and this failure to adequately train and supervise has had a chilling effect on Plaintiff's free speech in violation of the First Amendment.

77. Stafford's acts, training, supervision, policies, practices, customs, and/or procedures were the moving force behind the violation of Plaintiff's right to freedom of speech and were viewpoint-based in violation of the First Amendment.

78. Defendants will seek to enforce their Arrest Policy against Plaintiff in the future.

79. Defendants Stafford, Stafford Police Chief B. Krahn, and Defendant-Officers acted with reckless or callous indifference to the federally protected rights of Plaintiff warranting punitive damages against these Defendants.

80. As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiff suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief. Additionally, Plaintiff is entitled to compensatory and nominal damages for the past loss of his constitutional rights.

## SECOND CLAIM FOR RELIEF

### (Unlawful Search and Seizure—Fourth Amendment)

81. Plaintiff hereby incorporates by reference all preceding paragraphs.

82. By reason of aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants Stafford, Stafford Police Chief B. Krahn, and Defendant-Officers have deprived Plaintiff of his right to be free from unreasonable searches and seizures protected by the Fourth Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

83. By seizing Plaintiff and his personal property and subjecting Plaintiff to search and seizure on May 31, 2013 without probable cause or any other lawful authority, Defendants violated Plaintiff's rights protected by the Fourth Amendment.

84. The enforcement of the Arrest Policy against Plaintiff violated Plaintiff's rights protected by the Fourth Amendment.

85. Defendants' Arrest Policy was the moving force behind the violations of Plaintiff's rights protected by the Fourth Amendment.

86. As a direct and proximate result of Defendants' violations of the Fourth Amendment, Plaintiff has suffered irreparable harm, including the loss of his fundamental constitutional rights, and he suffered both physical and emotional harm, entitling him to declaratory and injunctive relief and damages.

87. Defendants acted with reckless or callous indifference to the federally protected rights of Plaintiff warranting punitive damages against these Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks this court:

A) To declare that Defendants violated Plaintiff's fundamental constitutional rights as set forth in this Complaint;

B) To declare that Defendants' acts, training, supervision, policies, customs, and/or procedures violate Plaintiff's fundamental constitutional rights to freedom of speech and freedom from unreasonable search and seizure, as set forth in this Complaint;

C) To declare that Defendants' practice allowing its agents, servants, and/or employees to end constitutionally protected speech and to execute unlawful search and seizure is unconstitutional as set forth in this Complaint;

D) To permanently enjoin Defendants' practice of allowing its agents, servants, and/or employees to end constitutionally protected speech and to execute unlawful search and seizure as set forth in this Complaint;

E) To award Plaintiff compensatory damages plus interest as set forth in this Complaint;

F) To award Plaintiff nominal damages against Defendants for all 42 U.S.C. § 1983 claims as set forth in this Complaint;

G) To award Plaintiff punitive damages against Defendants sued in their individual capacity for all 42 U.S.C. § 1983 claims for the Defendants' callous indifference for the Plaintiff's constitutional rights as set forth in this Complaint;

H) To award Plaintiff his reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

I) To grant such other relief as this court should find just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

Dated: December 16, 2014

Respectfully submitted,


s/ Jerad Najvar
Jerad Wayne Najvar
NAJVAR LAW FIRM
Texas Bar No. 24068079
Southern Dist. No. 1155651
4151 Southwest Freeway, Ste. 625
Houston, TX 77027
281.404.4696 phone
281.582.4138 facsimile
jerad@najvarlaw.com
*Attorney in Charge for Plaintiff*